J-S77008-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| CHAD EUGENE GINTER | |
| Appellant | No. 451 MDA 2016 |

Appeal from the Judgment of Sentence February 24, 2016
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0004746-2014
CP-22-CR-0004974-2014

BEFORE:  PANELLA, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PANELLA, J.               **FILED DECEMBER 09, 2016**

Appellant, Chad Eugene Ginter, appeals from the judgment of sentence entered in the Dauphin County Court of Common Pleas, Criminal Division, following his jury trial conviction for theft by unlawful taking or disposition.[1] We affirm.

The relevant facts of this case as taken from the certified record are as follows. Tara Nailor, the mother of Appellant's child, was engaged in an on-and-off-again relationship with Appellant for approximately six years. On August 15, 2014, Appellant contacted Ms. Nailor stating that he had taken

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3921(a).

some kettlebells[2] from Pure Fitness gym. Appellant had been previously employed at Pure Fitness, and upon termination, Appellant never returned his key. Sometime after Appellant told Ms. Nailor about the kettlebells, she went to the home of Appellant's mother, where Appellant was living at the time, to pick him up for a work out. While in the garage, Ms. Nailor saw the kettlebells.

Ms. Nailor later spoke with Eric Garonzik, who was part owner of Pure Fitness and worked there as an exercise physiologist. She asked Mr. Garonzik if he was missing any kettle bells; he stated that he was— specifically, he indicated that upon returning to the gym from a month-long stay in the hospital, he noticed his kettlebells and a three-tier kettlebell rack with a distinct scratch on it, along with other items, were missing from the gym. Ms. Nailor told him they were in Appellant's mother's garage. Mr. Garonzik suggested Ms. Nailor contact the police.

Detective James Moyer received a call from Ms. Nailor explaining that she had information regarding stolen kettlebells. Detective Moyer and another detective went to the address given by Ms. Nailor and found a set of kettlebells and a three-tier kettlebell rack in the garage. Thereafter, Ms. Nailor took screen shots of text messages she received from Appellant and

_____

[2] A Kettlebell is a cast iron or cast steel weight used to perform exercises. It resembles "a cannon ball with a handle." https://en.wikipedia.org/wiki/Kettlebell (last visited November 29, 2016).

sent them to Detective Moyer. The text messages indicated that "Chad" (Appellant) had messaged Ms. Nailor after the police attempted to contact him. Appellant stated that Ms. Nailor was "the only person that [Appellant] would have said anything to [(referring to the kettlebells)]. But let me tell you this, if so . . . Click." N.T., Trial, 12/11/15, at 19, 21.

Procedurally, the Commonwealth filed a criminal complaint against Appellant, on August 20, 2014, charging him with theft by unlawful taking or disposition (docketed at CP-22-CR-0004974-2014). Following a jury trial, Appellant was convicted of the aforementioned charge. On February 24, 2016, Appellant pled "no contest" to another conviction at a separate docket number (CP-22-CR-0004746-2014). Appellant was sentenced that day at both dockets to 1 to 5 years' incarceration with the sentence in the instant case to run concurrent to the sentence at the other docket. Appellant also was sentenced, at this docket, to pay a $50.00 fine and costs of the proceedings, and to return the items to the owner.

On March 3, 2016, Appellant filed a post-sentence motion arguing that his sentence was excessive and unreasonable and that his conviction was against the weight of the evidence. The court denied Appellant relief. Appellant filed a timely notice of appeal

In his first issue, Appellant argues the trial court impermissibly admitted the substance of the text messages into evidence because the Commonwealth failed to provide any tangible evidence, such as phone

records corroborating the conversation, to connect Appellant to the text messages. Appellant also complains that the source of the messages is questionable. Specifically, Appellant contends Ms. Nailor admittedly wrote "Chad" as the contact person sending the message, but Appellant posits Ms. Nailor could have staged the conversation with a friend in order to fabricate evidence against Appellant. We disagree.

"Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Koch*, 39 A.3d 996, 1002 (Pa. Super. 2011) (citation omitted).[3]

Electronic communications, such as emails and text messages, must be authenticated. *See id.*, at 1004. Authentication may be by direct or circumstantial evidence. *See id.* "[P]roof of any circumstances which will support a finding that the writing is genuine will suffice to authenticate the writing." *In re F.P.,* 878 A.2d 91, 94 (Pa. Super. 2005) (citation and internal quotation marks omitted). "[T]he foundation . . . may include factors relating to the contents of the writing and the events before and after

---

[3] In *Koch*, this Court reversed the trial court's decision to admit the contested text messages as sufficiently authenticated and not as inadmissible hearsay. Our Supreme Court accepted the Commonwealth's appeal to address the question of the "proper manner in which cell phone text messages can be authenticated and whether and when such messages are inadmissible hearsay." *Commonwealth v. Koch*, 106 A.3d 705, 706 (Pa. 2014) (per curiam order). Our Supreme Court, being an evenly divided Court, affirmed the decision of this Court. *See id*.

the execution of the writing." *Id.* at 95 (citation omitted). The mere fact that a text message was sent from a particular cellphone with a particular cellphone number attached to it is inadequate to constitute authentication, as "cellular telephones are not always exclusively used by the person to whom the phone number is assigned." *Koch*, 39 A.3d at 1005.

Instantly, after hearing objections and argument on the admissibility of the text messages, the court provided the following reasons for admission of the evidence.

> [Mr. Lysaght (counsel for Appellant)]: I do disagree [to the admissibility of the text messages], Your Honor. . . .
>
> [Mr. Corby (counsel for the Commonwealth)]: She will authenticate it on the stand. She will say, it was me, I received the texts messages, I had this conversation with [Appellant]. In the conversation, he actually says I am the one – you are the only one I would have told about this, referring to the stealing of the kettle bells [sic].
>
> [Mr. Lysaght]: Presumably.
>
> [The court]: I think she can testify to it. Now you want more[, Mr. Lysaght]. You want the text coming in to be able to corroborate what her testimony is. I believe she can testify she received the texts and here is what they all said. . . .

N.T., Trial, 12/10/15, at 12-13.

> [Mr. Lysaght]: I would renew my objection to the admissibility of the text messages. . . .
>
> *    *    *
>
> [The court]: Your motion to reconsider is denied. I stand by its admissibility based on the proffer as to its identification by the person who received the text message, and the context in which it was made, plus circumstantial evidence, plan to prove the

> offer of the text. And noting that this is a text and not an email is another factor that we consider and weighed.

*   *   *

N.T., Trial, 12/11/15, at 6-8.

The record supports the court's reasoning. Ms. Nailor testified that she had seen the text messages before trial, the messages came from Appellant, and the messages came from Appellant's phone number that he had since the day Ms. Nailor met Appellant. The content of the text messages, to which Ms. Nailor testified, reflected Appellant's concern and dissatisfaction with Ms. Nailor's contacting the police regarding the stolen kettlebells. Ms. Nailor further testified that since the date of the text messages in question, Appellant has continually contacted her via text message from that number about their child. Based on the foregoing, the trial court did not abuse its discretion in admitting the text messages into evidence, as there was sufficient evidence to authenticate them. **See Koch**, 39 A.3d at 1002; **In re F.P.,** 878 A.2d at 95. Thus, Appellant's first issue merits no relief.

In his next issue, Appellant avers the testimony of Commonwealth witness Mr. Garonzik is unreliable. This, Appellant argues, is because Mr. Garonzik stated he could not distinguish his kettlebells from other kettlebells, and even though the three-tier kettlebell rack contained the same scratch as the one found on his rack, Mr. Garonzik conceded that kettlebell racks are cumbersome and prone to receiving scratches if moved. Appellant likewise submits the testimony of Commonwealth witness Ms. Nailor is unreliable because she is biased against Appellant and has a motive

to fabricate allegations about him because she despises him. Specifically, Appellant highlights that Ms. Nailor testified she has no loyalty toward Appellant, that she wanted to "kill" him in the past, and has posted deleterious remarks about Appellant on Facebook to an audience of 1500 Facebook "friends." Appellant insists the Commonwealth's witness testimony is patently unreliable and establishes that the verdict was against the weight of the evidence. We disagree.

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

**Commonwealth v. Champney**, 832 A.2d 403, 408 (Pa. 2003) (internal citations omitted). A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." **Commonwealth v. Davidson**, 860 A.2d 575, 581 (Pa. Super. 2004) (citations omitted), **aff'd**, 938 A.2d 198 (Pa. 2007).

> When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's

- 7 -

decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review.

***Commonwealth v. Gibbs***, 981 A.2d 274, 282 (Pa. Super. 2009) (internal quotations and citations omitted).

In its Rule 1925(a) opinion, the court addressed Appellant's issue as follows:

> The Commonwealth's first witness was Tara Nailor, who is the mother of one of [Appellant's] children. Ms. Nailor and [Appellant] had an on-again/off-again relationship for approximately six years. She testified that on August 15, 2014, [Appellant] had contacted her and said that he had gone to Pure Fitness gym and had taken some kettle bells [sic]. Shortly thereafter, Ms. Nailor went to [Appellant's] mother's home, where he was living at the time, to pick [Appellant] up for a work out. While in the garage, Ms. Nailor saw the kettle bells [sic]. When shown photographs (Exhibits 1 and 2) of kettle bells [sic] in a cabinet of [Appellant's] mother's garage, Ms. Nailor confirmed that they were the ones she observed.

> Ms. Nailor subsequently spoke with Eric Garonzik, who at the time worked at Pure Fitness as an exercise physiologist and was part owner of the gym. Ms. Nailor knew Mr. Garonzik because he was her trainer, and also worked with [Appellant] for a short time. She asked Mr. Garonzik if he was missing any kettle bells [sic] from Pure Fitness. He said yes. Ms. Nailor told him they were in [Appellant's] mother's garage. Mr. Garonzik then asked Ms. Nailor if she would contact the Swatara Police about it, and she responded that she would. According to Mr. Garonzik, he terminated [Appellant] from his position at Pure Fitness as a trainer, but [Appellant] never returned the key. When Mr. Garonzik returned to Pure Fitness after an injury and a month-long stay in the hospital, his kettle bells [sic] were missing from Pure Fitness.

> Detective James Moyer, who had been assigned to the case, confirmed that he had received a call from Ms. Nailor explaining that she had information that [Appellant] had stolen kettle bells

[sic]. Detective Moyer and another officer went to the address given by Ms. Nailor and found a set of kettle bells [sic] [and a three-tier kettlebell rack] in the garage.

In light of the trial testimony, it is clear that an argument that the verdict was against the weight of the evidence cannot be validated. [Appellant] confessed to his ex-girlfriend that he had taken kettle bells [sic] from Pure Fitness, and they were later discovered in [Appellant's] mother's garage. The jury found the testimony of Ms. Nailor, Mr. Garonzik, and Detective Moyer to be credible, and the verdict based on such evidence does not shock one's sense of justice.

Trial Court Opinion, filed 7/1/16, at 3-4 (citations to the record omitted).

The trial court found that the verdict did not shock its sense of justice. We find no abuse of discretion with this conclusion. The figure of Justice is firmly rooted to her pedestal in this case. Therefore, Appellant's claim fails.

In his final issue, Appellant argues the sentence imposed by the trial court was excessive and unreasonable, and constitutes too severe a punishment. Appellant concedes that this claim challenges the discretionary aspects of Appellant's sentence. **See** Appellant's Brief, at 15.

"A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." **Commonwealth v. McAfee**, 849 A.2d 270, 274 (Pa. Super. 2004) (citation omitted).

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

[W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at

- 9 -

sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42. Pa.C.S.A. § 9781(b).

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted).

Here, Appellant challenged his sentence in a post-sentence motion and filed a timely appeal. Appellant's brief also contains the requisite Rule 2119(f) statement. There, he contends that the sentence imposed by the trial court "was excessive and unreasonable and constitutes too severe a punishment" because Appellant's prior record is comprised of convictions stemming from the tumultuous relationship he had with Ms. Nailor; the victim in this case had a heroin addiction that resulted in his death; and Appellant has learned from his experiences to behave as a law-abiding citizen. Appellant's Brief, at 16-17.

While Appellant argues the sentence imposed by the trial court was excessive, in substance he argues that the trial court did not *adequately* consider the factors *of record*. Such a claim does not raise a substantial question for our review. ***See Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1266 (Pa. Super. 2014) (*en banc*), ***appeal denied***, 104 A.3d 1 (Pa. 2014) ("[A]rguments that the sentencing court failed to consider the factors proffered in 42 Pa.C.S. § 9721 does present a substantial question whereas a statement that the court failed to consider facts of record, though

- 10 -

necessarily encompassing the factors of § 9721, has been rejected.") Thus, Appellant's final challenge to the discretionary aspects of his sentence fails.

Based on the foregoing, we conclude Appellant's issues are without merit. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/9/2016