**In the Interest of: F.P., A Minor**

**Appeal of: F.P., A Minor, Appellant**

Superior Court of Pennsylvania.

Submitted Jan. 24, 2005.
Filed June 15, 2005.

---

Victoria H. Vidt, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before: FORD ELLIOTT, TODD, and OLSZEWSKI, JJ.

OPINION BY FORD ELLIOTT, J.:

¶ 1 F.P. appeals the disposition order of May 27, 2004, after he was adjudicated delinquent on one count of aggravated as-

sault.[1]  We affirm.

¶ 2 A hearing was held on May 27, 2004 before the Honorable Christine A. Ward. Z.G., the victim in this case, testified that on September 25, 2003, after getting off the school bus, appellant approached him from behind and struck him numerous times about the head and face.  (Notes of testimony, 5/27/04 at 15–16.)  Z.G. fell to the ground and appellant continued to assault him.  (*Id.* at 16.)  Subsequently, Z.G. was treated at Children's Hospital in Pittsburgh and released.  (*Id.* at 17.)  At the time of the hearing, Z.G. continued to suffer from headaches and insomnia.  (*Id.* at 19.)  Several witnesses, including the victim, testified that appellant was angry because he believed Z.G. had stolen a DVD from him.  (*Id.* at 8, 31–32, 36.)  Transcripts of instant messages[2] between appellant and Z.G. which occurred prior to the assault were admitted into evidence.  (*Id.* at 14; Commonwealth Exhibit 1.)  In these messages, appellant accuses Z.G. of stealing from him and threatens to beat him up.  (*Id.*)

¶ 3 Judge Ward adjudicated appellant delinquent and committed him to the Academy's summer school and day and evening programs.  On June 28, 2004, appellant filed a notice of appeal.  Appellant was ordered to file a concise statement of matters complained of on appeal,[3] and complied on July 28, 2004.  On August 17, 2004, the trial court filed an opinion addressing the issues raised in appellant's 1925(b) statement.

¶ 4 On appeal to this court, appellant raises the following issue for our review: "Did the trial court err in permitting the introduction of a computerized instant message into evidence in that the instant message was inadmissible as not being properly authenticated?"  (Appellant's brief at 4 (capitalization omitted).)[4]

¶ 5 Appellant argues that the instant messages should not have been admitted because it was not proved that appellant was the author.  He contends that given the inherent unreliability of e-mail or instant messages, it was incumbent upon the Commonwealth to authenticate the documents by introducing evidence of their source from the internet service provider or presenting the testimony of a computer forensics expert.  We disagree, and conclude that the documents were admissible and properly authenticated through the use of circumstantial evidence.

¶ 6 Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion.  *Commonwealth v. Lilliock,* 740 A.2d 237, 244 (Pa.Super.1999), *appeal denied,* 568 Pa. 657, 795 A.2d 972 (2000).  The requirement of authentication or identification is codified at Pennsylvania Rule of Evidence 901, 42 Pa.C.S.A.: "(a) General provision.  The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  Pa.R.E. 901(a).  Testimo-

---

1.  18 Pa.C.S.A. § 2702(a)(1).

2.  "Instant messaging differs from e-mail in that conversations happen in realtime." http://en.wikipedia.org.  "Generally, both parties in the conversation see each line of text right after it is typed (line-by-line), thus making it more like a telephone conversation than exchanging letters."  *Id.*

3.  Pa.R.A.P.1925(b).

4.  An additional issue raised in appellant's 1925(b) statement and addressed by Judge Ward in her opinion, whether or not the evidence was sufficient to support appellant's adjudication for aggravated assault, has been abandoned on appeal.

ny of a witness with personal knowledge that a matter is what it is claimed to be may be sufficient to authenticate or identify the evidence. Pa.R.E. 901(b)(1). *See also* Comment, citing *Commonwealth v. Hudson*, 489 Pa. 620, 414 A.2d 1381 (1980); *Heller v. Equitable Gas Co.*, 333 Pa. 433, 3 A.2d 343 (1939).

¶ 7 A document may be authenticated by direct proof and/or by circumstantial evidence. *Commonwealth v. Brooks*, 352 Pa.Super. 394, 508 A.2d 316, 318 (1986) (citations omitted). " '[P]roof of any circumstances which will support a finding that the writing is genuine will suffice to authenticate the writing.' " *Id.* at 319, quoting McCormick, *Evidence* § 222 (E. Cleary 2d Ed.1972). "The courts of this Commonwealth have demonstrated the wide variety of types of circumstantial evidence that will enable a proponent to authenticate a writing." *Id.* (collecting cases).

¶ 8 In this case, the instant messages were from a user with the screen name "Icp4Life30" to and between "WHITEBOY Z 404." (Commonwealth Exhibit 1.) Z.G. testified that his screen name is WHITEBOY Z. (Notes of testimony, 5/27/04 at 11.) Z.G. printed the instant messages off his computer. (*Id.* at 14.) He believed the other participant in the conversation to be appellant. (*Id.*)

¶ 9 Appellant believed Z.G. had stolen a DVD from him. (*Id.* at 7.) Appellant sent Z.G. text messages stating he wanted to fight him because Z.G. had allegedly stolen the DVD. (*Id.* at 8.) According to J.H., a friend of both appellant and Z.G., appellant was angry because the DVD was a rental; and after it went missing, appellant had to pay for it. (*Id.* at 21, 36.)

¶ 10 It appears that there are transcripts of several instant message "conversations" between Z.G. and appellant on at least two different dates. (Commonwealth Exhibit 1.) In the first conversation, apparently taking place July 30, 2003 and initiated by appellant, Z.G. asks "who is this," and appellant replies, using his first name as it appears in the record. (*Id.*) Throughout the transcripts, appellant threatens Z.G. with physical violence and accuses Z.G. of stealing from him. (*Id.*) Z.G. states, "i got no reason to fight u and u got no reason to fight me"; appellant answers, "ya i do. u stole off me." [5] (*Id.*) Later, appellant taunts Z.G. and tells him to come over to his house; when Z.G. states, "well i won;t be there cuz i not fightin u"; appellant replies, "well i am fightin u so when i see u ur dead." (*Id.*)

¶ 11 After receiving these threatening instant messages from appellant in the summer of 2003, Z.G. notified his school counselor and the school social worker. (Notes of testimony, 5/27/04 at 14–15.) Appellant and Z.G. met with them separately regarding the messages and the alleged theft of the DVD from appellant. (*Id.* at 15.) Mr. Joseph K. DeGregorio, the high school guidance counselor, testified they conducted a "mediation" between Z.G. and appellant. (*Id.* at 54–55.) Mr. DeGregorio was aware of threatening instant messages between Z.G. and appellant. (*Id.* at 56.) Appellant did not deny sending the instant messages. (*Id.* at 57) The mediation proceedings were closed several days prior to this incident; ·at the time, appellant stated he had no intention of fighting Z.G. (*Id.*)

¶ 12 In the final instant message conversation, which appears to have occurred in September 2003, just prior to the assault

---

**5.** In the interest of accuracy, excerpts from the instant messages have been left unaltered and uncorrected for grammatical errors.

on Z.G. and at approximately the same time as the school mediation proceedings, appellant states: "u gotta tell tha school shit and stuff like a lil bitch." (Commonwealth Exhibit 1.) Appellant also threatens, "want my brother to beat ur ass on tha steel center bus" and "want [sic] till i see u outta school ima beat ur aSS." (*Id.*) At the adjudication hearing, appellant's brother J.P. testified that he witnessed appellant beating up Z.G. after disembarking the school bus. (Notes of testimony, 5/27/04 at 48–50.) Appellant and his brother ordinarily do not ride Z.G.'s bus. (*Id.* at 5–6, 49.)

¶ 13 Clearly, there was sufficient evidence that appellant was "Icp4Life30" and sent the threatening messages to Z.G. He referred to himself by his first name. He repeatedly accused Z.G. of stealing from him, which mirrored testimony that appellant was angry about a stolen DVD. Appellant referenced the fact that Z.G. had approached high school authorities about the instant messages. At one point, Z.G. states, "we used to be firends [sic] til u thought i stole off u"; appellant replies rather inartfully, with yet more foul language. (Commonwealth's Exhibit 1.) Repeatedly, appellant called Z.G. vile names and threatened to beat him up. All of this evidence, taken together, was clearly sufficient to authenticate the instant message transcripts as having originated from ap-

pellant. *See Brooks, supra* at 321 ("[T]he foundation may consist of circumstantial evidence and may include factors relating to the contents of the writing and the events before and after the execution of the writing."). We find no abuse of discretion in their admission.[67]

¶ 14 Essentially, appellant would have us create a whole new body of law just to deal with e-mails or instant messages. The argument is that e-mails or text messages are inherently unreliable because of their relative anonymity and the fact that while an electronic message can be traced to a particular computer, it can rarely be connected to a specific author with any certainty. Unless the purported author is actually witnessed sending the e-mail, there is always the possibility it is not from whom it claims. As appellant correctly points out, anybody with the right password can gain access to another's e-mail account and send a message ostensibly from that person. However, the same uncertainties exist with traditional written documents. A signature can be forged; a letter can be typed on another's typewriter; distinct letterhead stationary can be copied or stolen. We believe that e-mail messages and similar forms of electronic communication can be properly authenticated within the existing framework of Pa. R.E. 901 and Pennsylvania case law. *See* Robert Berkley Harper, Pennsylvania Evi-

6. Although appellant does not raise the issue of relevancy, we note the messages were clearly relevant as they related to an issue in the truth-determining process, *i.e.*, the guilt or innocence of appellant. The messages bear directly on this question and suggest a motive for the assault as well as appellant's identity as the perpetrator.

7. In addition, we note that even if the instant messages had not been properly authenticated, their admission into evidence would have constituted harmless error. Several eyewitnesses, including appellant's brother and two high school friends, testified to the fight. Ap-

pellant admitted to Mr. DeGregorio and Officer Katie Donahue that he had been in a physical altercation with Z.G. The testimony was consistent with appellant having initiated the fight and being the aggressor. The Commonwealth introduced photographs of Z.G.'s injuries. The trial court did not have to rely on the instant messages to find beyond a reasonable doubt that appellant intentionally, knowingly, or recklessly caused serious bodily injury to Z.G. (Trial court opinion, 8/17/04 at 7–8.) Appellant was not charged with harassment by communication or any other offense stemming from the instant messages.

dence § 9.01[B][9] (2001) ("An e-mail message may be authenticated through various traditional common-law methods, as well as those discussed in the authentication rule ....").[8] We see no justification for constructing unique rules for admissibility of electronic communications such as instant messages; they are to be evaluated on a case-by-case basis as any other document to determine whether or not there has been an adequate foundational showing of their relevance and authenticity.

¶ 15 Order affirmed.

8. There is a paucity of reported cases involving authentication of e-mails or instant messages, and none in the Commonwealth of Pennsylvania. However, those there are, although not binding on this court, would not suggest a contrary result. *See Massimo v. State of Texas*, 144 S.W.3d 210 (Tex.App.—Fort Worth 2004) (e-mails admissible where the victim recognized the appellant's e-mail address; the e-mails discussed things only the victim, the appellant, and a few other people knew about; they were written in the way in which the appellant would communicate; and a third party had witnessed the appellant sending a similar threatening e-mail to the victim previously); *Kearley v. State of Mississippi*, 843 So.2d 66 (Miss.App.2002), *certiorari denied*, 842 So.2d 578 (Miss.2003) (e-mails adequately authenticated where victim vouched for their accuracy, and a police officer testified that the appellant admitted sending the e-mails); *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F.Supp.2d 1146 (C.D.Cal. 2002) (exhibits printed off the internet, including pictures and webpages, had sufficient circumstantial indicia of authenticity (such as dates and web addresses) to support a reasonable juror in the belief the documents are what the proponent says they are); *United States v. Siddiqui*, 235 F.3d 1318 (11th Cir.(Ala.) 2000), *certiorari denied*, 533 U.S. 940, 121 S.Ct. 2573, 150 L.Ed.2d 737 (2001) (e-mails properly authenticated where they bore the appellant's e-mail address; the reply function automatically dialed the appellant's e-mail address as the sender; they contained factual details known to the appellant; they bore his nickname; and they were followed up by phone conversations involving the same subject matter); *United States v. Tank*, 200 F.3d 627 (9th Cir.(Cal.) 2000) (chat room log printouts authenticated where the appellant admitted he used the screen name "Cessna" when he participated in one of the conversations recorded; several co-conspirators testified the appellant used that name; and when they arranged a meeting with the person who used the screen name "Cessna," it was the appellant who showed up). In all of these cases, the court examined the electronic messages within the framework of existing jurisprudence/rules of evidence to determine whether or not they had been properly authenticated. Our research revealed two additional cases, one of which is cited extensively by appellant in the instant case: *Kupper v. State of Texas*, 2004 WL 60768 (Tex.App.—Dallas 2004); and *People v. Von Gunten*, 2002 WL 501612 (Cal.App. 3 Dist.2002). However, neither of these cases is published and therefore cannot be cited or relied upon as precedential authority. *See* Tex.R.App.P. 47; Cal. Rules of Court, Rule 977(a); *compare* Pa.Super.Ct.I.O.P. § 65.37. Our rules prohibit parties from relying on unpublished memorandum opinions of this court; in the same vein, we certainly will not consider unpublished opinions from foreign jurisdictions which have no binding effect in this Commonwealth at any rate.