J-A31040-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| KEVIN BEATTIE | |
| Appellant | No. 135 EDA 2016 |

Appeal from the Judgment of Sentence December 7, 2015
in the Court of Common Pleas of Philadelphia County Criminal Division
at No(s): CP-51-CR-0011069-2012

BEFORE: BENDER, P.J.E., MOULTON , J., and FITZGERALD, J.[*]

MEMORANDUM BY FITZGERALD, J.: **FILED AUGUST 15, 2017**

Appellant, Kevin Beattie, appeals from his judgment of sentence of three to six years' imprisonment following the revocation of his probation. Appellant contends that the trial court (1) improperly admitted hearsay into evidence without proper authentication; (2) erred by finding the evidence sufficient to revoke his probation; and (3) erred in holding a revocation hearing prior to trial on the new charges involving terroristic threats. We affirm.

On January 13, 2013, Appellant pleaded guilty to arson[1] and conspiracy[2] for setting fire to a playground structure in a South Philadelphia park, causing approximately $325,000.00 in damages. On March 14, 2013,

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S § 3301(c)(1).

[2] 18 Pa.C.S. § 903.

the trial court sentenced Appellant to eleven and one-half to twenty-three months' imprisonment followed by five years' probation. On September 26, 2013, Appellant was paroled.

On June 22, 2015, while Appellant was serving the probationary portion of his arson sentence, he was arrested and charged with simple assault, aggravated assault and recklessly endangering another person.[3] On July 9, 2015, Appellant was arrested for terroristic threats, possession of a prohibited firearm and related offenses. The trial court granted the Commonwealth's request to proceed with a probation violation hearing before trial on the new charges, also known as a ***Daisey Kates***[4] hearing.

On July 28, 2015, the court held the ***Daisey Kates*** hearing. The Commonwealth presented two witnesses, sisters Kathleen and Regina Foland, who testified that Appellant sent them threatening Facebook messages. Kathleen testified that Appellant sporadically lived with her and her fiancé, Harry Thompson, at their house between December 2014 and April 2015. Kathleen knew that Appellant closely associated himself with a professional wrestler, Randy Orton, and "always said" that he was Orton. N.T. Revocation Hr'g, 9/14/15, at 30-31, 55. In the summer of 2015, Kathleen was pregnant with her second child with a due date in August. She

---

[3] The Commonwealth subsequently withdrew prosecution on these charges.

[4] ***See Commonwealth v. Kates***, 305 A.2d 701, 706 (Pa. 1973) (following new charges against probationer, court is authorized to hold violation of probation hearing before trial on new charges takes place).

- 2 -

and her fiancé Harry also had a four year old daughter, Courtney, who lived in their house. Kathleen testified that in April 2015, she directed Appellant to move out of her house after witnessing him break her window, and because "he beat up [his girlfriend] Janet and they went to court for it and she dropped the charges because he told her to drop the charges against him." *Id.* at 51.

Kathleen testified that she received a Facebook "friend" request from an account under the name of "Randy Orton," but which bore Appellant's photograph. Having heard Appellant frequently refer to himself as Orton, she knew that the Facebook request was from him. On June 13, 2015, she accepted the "friend" request.

On June 14, 2015, one day after accepting the "friend" request, she received approximately twenty threatening messages, as well as photographs of Appellant pointing a gun. She noticed that prior to sending the threats, the photograph for the account was changed from Appellant to Randy Orton.

The first message to Kathleen came with the photograph of Appellant pointing what she believed to be a real gun, with the words: "Your next." The second message read:

> Hey, you fat pregnant bitch. Me and Janet is on our way over there to blow up your house and we going to fuck Jermaine up. Tell him that Ant and I got a little present for y'all. Tell your precious Courtney she is going to get it too and Brittany and Harry is going to get wiped out with a patch of a bomb on that house. We on our way. We

might just come and do it at night while you are sleeping again and tell your sister we won't blow her head off.

*Id.* at 34-35. Kathleen testified that Jermaine was a friend of Appellant's who also had lived in her house for a period of time. *Id.*

The third message stated: "Fucking bitch. You is a bitch. I am not scared of the cops. When you see Jermaine today, tell him I'm going to [kill] him. I'm going to kill Harry. I am going to kill Courtney, Brittany, and you." The fourth message read: "Tell your punk ass brother to come outside. Yeah. I'm right here. Your brother is a punk ass bitch because he pulled out a fake sword [on] Jermaine. He is a punk ass. We about to break your brother's windows. I'm going to blow your house up to the ground." She received more pictures of Appellant holding a gun with the text: "You're going to see this or I got a gun." *Id.* at 35-36.

Another message stated: "Your sister is a fat ass bitch. Your wife is a fat ass bitch. Me and Lisa and Kelly and Janet we live next door to you all. We live with Lisa Peewee in her basement right now watching you all. See you all tonight when your window get broken [in]." Kathleen knew that Lisa was a friend of Appellant's wife, Kelly, and lived two houses away from her own. *Id.* at 36-37, 47. Yet another message, read: "Your young is a bitch. He is going to kill Courtney. This is Janet." Kathleen opined that Janet could not have sent the message, because she was with her grandmother at the time. *Id.* at 37, 46. The final message indicated: "Randy Orton. Time

is coming for you. This is Kevin. You are dead. The families [leave] to me and Kelly is coming for you bitches." *Id.* at 37.

The other complainant, Regina, testified that at 3:19 a.m. on June 14, 2015, she received three Facebook messages from an account listed under the name "Randy Orton." The first message stated: "Time is coming for you and yours next," with a row of smiley face emoticons. *Id.* at 6-16. The second message read: "Kelly, Janet and Kevin is coming for you and yours." Regina also received a photograph of Appellant pointing a gun at the camera with the text: "You're first." The same photograph was sent a second time, with the message: "Your daughter Brittany, she's next." Regina's daughter Brittany was seventeen years old at the time. *Id.* at 13-17.

Regina recognized Appellant's photograph immediately, having met him twice at Kathleen's house. She knew that Janet was Appellant's girlfriend, and that "Kelly" was both Appellant's wife and the sister of Kathleen's fiancé, Harry. Regina also knew that Appellant had contact with her daughter, Brittany, when Brittany lived with Kathleen.

The messages frightened Kathleen and Regina and placed them in fear for their own and their families' safety. After Appellant's arrest on July 9, 2015, Kelly came to Kathleen's house and asked her to drop the charges. Kathleen refused. According to Kathleen, she gave birth to her son prematurely due to the stress caused by the threats. *Id.* at 39, 55-56.

Appellant presented Joell McNiff as a witness, who testified that she received a photograph of Appellant carrying gun in a message over Facebook from "Kelly Coppertino" on March 4, 2015. McNiff testified that the picture that she received was the same picture that Regina and Kathleen received. McNiff claimed that the message came from Kelly Coppertino because she recognized Coppertino's cellphone number. *Id.* at 59-69.

Appellant testified on his own behalf and denied sending any threatening text messages or having any problems with Kathleen. He further denied knowing Courtney and Brittany despite acknowledging that he had lived with Kathleen. He stated that he first saw the picture of him holding the gun on Jermaine's Facebook page in March 2015. Appellant attempted to attribute the messages to Jermaine. Appellant denied that the Randy Orton account was his. However, he further admitted that while on probation, he traveled to New Hampshire in May 2015 without permission and returned in June 2015 for a court date. *Id.* at 86-94.

The trial court found Appellant in violation of his probation, stating that it found the Commonwealth's evidence credible. The trial court concluded that the Commonwealth had proven that probation "no longer continues to be a method of supervising." *Id.* at 108-09.

At sentencing on December 7, 2015, the Commonwealth sought a term of imprisonment based on the evidence presented at the *Daisey Kates* hearing, the fact that Appellant went to New Hampshire without permission

while on probation, and his positive drug test for THC ingested in a marijuana brownie. N.T. Sentencing Hr'g, 12/7/15, at 19-22. The trial court sentenced Appellant to three to six years' imprisonment. *Id.* at 27. On January 4, 2016, Appellant filed this appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues in this appeal:

> A. Did the [t]rial [c]ourt err in admitting into evidence hearsay documents without proper authentication?
>
> B. Was the [e]vidence admitted by the [t]rial [c]ourt [s]ufficient to [f]ind [Appellant] in technical violation of his probation?
>
> C. Did the [t]rial [c]ourt err in holding a *Dais*[*e*]*y Kates* hearing for [Appellant] to begin with?

Appellant's Brief at 4.

Appellant first argues that the trial court erred in admitting the Facebook messages during his revocation hearing because they were unauthenticated and constituted hearsay. We disagree.

Preliminarily, we note that Appellant's argument may be deemed waived. Appellant's counsel objected once to the form of the Commonwealth's question regarding whether Regina "ever got any messages from [Appellant] about [her] daughter[.]" N.T. Revocation Hr'g at 11. Counsel asserted:

> Well, [the Commonwealth] said did you ever get a message from [Appellant]. So far, [the Commonwealth] established that [Regina] received messages from Randy Orton. So I think we have to keep the focus narrow to the

> messages she received from Randy Orton. You haven't established that she received messages from [Appellant] yet.

*Id.* at 11. Although the trial court sustained the objection to the form and directed the Commonwealth to rephrase its question, Appellant did not seek to preclude the messages. Moreover, Appellant did not object when Regina and Kathleen testified that Appellant sent them the messages. *Id.* at 15, 41. Therefore, Appellant did not contemporaneously object to the admission of the evidence based on its authenticity or as hearsay. *See* Pa.R.A.P. 302(a).

In any event, turning to Appellant's challenge to the authenticity of the Facebook message, Rule 901 requires parties to authenticate documents with "evidence sufficient to support a finding that the matter in question is what its proponent claims." Pa.R.E. 901(a). Parties may use circumstantial evidence to authenticate documents. *See Commonwealth v. Collins*, 957 A.2d 237, 265 (Pa. 2008) (circumstantial evidence sufficient to authenticate letter, where letter was mailed from prison where defendant was incarcerated and contained his prison identification number); *In re F.P.*, 878 A.2d 91, 95 (Pa. Super. 2005) (circumstantial evidence, including use of defendant's first name and references to particular events, sufficient to authenticate threatening instant messages).

Here, the complainants' testimony provided ample circumstantial evidence that authenticated the Facebook messages as coming from

Appellant. Kathleen Foland testified that she accepted Appellant's "friend" request over Facebook one day before he sent the threats, and that his picture was on his account. The account was registered under the name "Randy Orton," with whom Kathleen knew Appellant closely associated; she had heard Appellant refer to himself as "Randy Orton" on numerous occasions. Appellant changed the picture on his account to one of Orton when he began sending the threats. The posts contained pictures of Appellant, and he stated "this is Kevin" in one of the messages. Appellant had lived with Kathleen for a period of time and clearly identified both sisters' family members by name, specifying those members he had lived with in Kathleen's house. The threats included the names of Appellant's girlfriends, Kelly and Janet, as well as a nearby neighbor of Kathleen's whom both Appellant and Kathleen knew. Appellant knew that Kathleen was pregnant and referred to a particular incident involving Kathleen's brother and their mutual friend, Jermaine. Regina received three Facebook messages from an account listed under the name "Randy Orton," whom she knew to be a professional wrestler. Two messages included photographs of Appellant pointing a gun at the camera with messages threatening her and her daughter. Regina recognized Appellant's photograph immediately, having met him twice at Kathleen's house in South Philadelphia, and Regina knew that Appellant had prior contact with Brittany.

Appellant contends that the Facebook messages were not authentic because somebody else created them, which he claims is easy to do on electronic media. This argument is unpersuasive. In **F.P.**, this Court rejected a similar argument that electronic communications are "inherently unreliable because of their relative anonymity and the fact that while an electronic message can be traced to a particular computer, it can rarely be connected to a specific author with any certainty." **Id.** at 95. We reasoned: "[T]he same uncertainties exist with traditional written documents. A signature can be forged; a letter can be typed on another's typewriter; distinct letterhead stationary can be copied or stolen." **Id.** In either case, the evidence is admissible once the proponent offers "evidence sufficient to support a finding that the matter in question is what its proponent claims," as the Commonwealth did here. **Id.** at 93. Any alleged uncertainties go to the weight of the evidence, not its admissibility.

As to Appellant's hearsay claim, it is well settled that:

> The focus [of] a probation hearing, even though prompted by a subsequent arrest, is whether the conduct of the probationer indicates that the probation has proven to be an effective vehicle to accomplish rehabilitation and a sufficient deterrent against future anti-social conduct. It must be emphasized that a probation revocation hearing is not a trial: "The court's purpose is not to determine whether the probationer committed a crime . . . . It follows that probation revocation hearings are flexible, and **material not admissible at trial may be considered by the court.**["] "The degree of proof necessary for probation revocation is less than that required to sustain a criminal conviction." "Probation may be revoked on the basis of conduct which falls short of criminal conduct."

*Commonwealth v. Castro*, 856 A.2d 178, 180 (Pa. Super. 2004) (citation omitted) (emphasis added).

Under this liberal standard, the admission of the Facebook messages was proper. This evidence was clearly relevant to the purpose of the revocation hearing—the determination of whether probation was "an effective vehicle to accomplish [Appellant's] rehabilitation" and "[deter] future anti-social conduct." *Id.* at 160. Furthermore, contrary to Appellant's claim, the Facebook messages were not hearsay; they were admissible under an exception to the hearsay rule, Pa.R.E. 803(25), as statements "offered against an opposing party" that he made "in an individual . . . capacity." *See Commonwealth v. Weiss*, 81 A.3d 767, 800 (Pa. 2013) (defendant's threat of another was voluntary extrajudicial statement that was admissible against him, "even though the threat contain[ed] no clear admission of guilt of the offense prosecuted").

For these reasons, Appellant's challenges to the admission of the Facebook messages warrant no relief.

In his second issue, Appellant contends that the evidence was insufficient to support the trial court's conclusion that he violated his probation. Appellant's brief completely fails to develop this argument. Therefore, he has waived this issue. *See Commonwealth v. Freeman*, 128 A.3d 1231, 1249 (Pa. Super. 2015) (murder defendant failed to adequately brief his argument of unlawful jury tampering by prosecution,

and thus waived argument on appeal, where he made no effort whatsoever to discuss applicable law or link facts of his case to that law and failed to develop coherent legal argument in support of his claim).

Even if Appellant had preserved this argument for appeal, it would not have entitled him to relief. "[R]evocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion." *Commonwealth v. MacGregor*, 912 A.2d 315, 317 (Pa. Super. 2006) (citation omitted).

The Commonwealth presented evidence that Appellant repeatedly threatened to kill Kathleen and Regina and their family members. In addition to written threats, he sent pictures of himself pointing a gun at the viewer. He threatened to "blow [Kathleen's] house up to the ground" and claimed to be spying on her from a nearby neighbor's house. As a result, both sisters feared for their and their families' safety. Kathleen testified that the threats caused her such stress that she gave birth to her son prematurely. Clearly, being on probation had not sufficiently deterred Appellant from engaging in anti-social conduct. *See Commonwealth v. Infante*, 888 A.2d 783, 791 (Pa. 2005) ("A probation violation is established whenever it is shown that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future anti-social conduct"

(citation omitted)). Moreover, the Commonwealth established—and Appellant himself admitted—that he violated his probation by traveling to New Hampshire without permission and ingesting marijuana. Thus, the court's decision to revoke probation was well within its discretion. ***See, e.g., Commonwealth v. Malovich***, 903 A.2d 1247, 1253-54 (Pa. Super. 2006) (where appellant displayed an "attitude problem" toward probation, was "not willing to change," and had not been "putting anything into" court-imposed rehabilitation efforts, court properly determined that probation was no longer appropriate and imposed period of incarceration).

In his final argument, Appellant claims that the trial court erred in holding his revocation hearing prior to trial on his terroristic threats and weapons charges. Appellant waived this argument by failing to raise it during his revocation hearing. ***See Commonwealth v. King***, 430 A.2d 990, 991 (Pa. Super. 1981) ("objections not raised during a counselled revocation proceeding will not be considered on appeal") (citations omitted).

Even if Appellant preserved this issue for appeal, it is devoid of substance, because it is clear that "a probation violation hearing may be conducted prior to a trial for the criminal charges based on the same activities." ***Commonwealth v. Brown***, 469 A.2d 1371, 1375 (Pa. 1983) (citing ***Kates***, 305 A.2d at 706).[5]

---

[5] The Commonwealth may elect to defer the revocation hearing until after trial. ***See Brown***, 469 A.2d at 1376. If, however, the defendant is

> [I]t is quite possible for a person to be acquitted of charges brought against him and yet have his probation revoked based upon the existence of those charges being brought against him. However . . . a bare assertion of an arrest, without a conviction, is lacking in probative value. Thus, before a court may revoke probation, factual evidence, in addition to the fact of the arrest, must be presented.

**Commonwealth v. Fleeger**, 437 A.2d 60, 61 (Pa. Super. 1981) (citation and quotation marks omitted). Here, as discussed above, the Commonwealth fulfilled its burden during Appellant's revocation hearing by presenting ample evidence "in addition to the fact of arrest." **Id.**

Judgment of sentence affirmed.


Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/15/2017

---

acquitted at trial, the Commonwealth is barred from seeking revocation on the basis of the new charges. **Id.** at 1377-78. Obviously, this scenario did not occur here, because the Commonwealth opted for a revocation hearing prior to trial.

- 14 -