**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BRIAN SHANE SHATZER | : | |
| | : | |
| Appellant | : | No. 1999 MDA 2019 |

Appeal from the Judgment of Sentence Entered November 20, 2019
in the Court of Common Pleas of Franklin County
Criminal Division at No(s): CP-28-CR-0000706-2018

BEFORE: PANELLA, P.J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED OCTOBER 15, 2020**

Brian Shane Shatzer ("Shatzer") appeals from the judgment of sentence entered following his conviction of drug delivery resulting in death.[1] We affirm.

In the early morning hours of September 6, 2017, police responded to a home in Waynesboro, Pennsylvania, based on a report of a possible drug overdose. Upon arriving, police discovered Samuel Myerly (the "Decedent") in an upstairs bedroom in a state of cardiac arrest. The officers found evidence of recent drug use on the Decedent's person. The Decedent was later pronounced dead at a nearby hospital, and a medical examination after his death determined that he suffered a fatal overdose.

---

[1] 18 Pa.C.S.A. § 2506(a).

Police interviewed several witnesses, including the resident of the home at which the Decedent overdosed and two individuals who had been with the Decedent prior to the Decedent's overdose. Police also interviewed Shatzer's roommate, who told police that he observed Shatzer sell the Decedent narcotics shortly before he died. A later review of messages on the Decedent's cell phone disclosed phone calls and text messages between the Decedent and Shatzer on the night of the overdose, as well as several text messages between Shatzer and the Decedent in the days prior to the overdose, wherein the parties discussed Shatzer selling the Decedent narcotics.

Based upon the foregoing, Shatzer was arrested and charged, on January 26, 2018, with drug delivery resulting in death. Three days before trial, Shatzer filed a Motion *in limine* to exclude evidence related to a series of telephone calls that Shatzer had placed while in jail, based on the late disclosure of the evidence by the Commonwealth. The trial court denied the Motion. A jury subsequently convicted Shatzer of the above-mentioned offense. The trial court postponed sentencing for the preparation of a pre-sentence investigation report. On November 20, 2019, the trial court sentenced Shatzer to 114 to 120 months in prison, with credit for time served.

Shatzer did not file a post-sentence motion. Shatzer filed a timely Notice of Appeal and, concurrently, a Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Shatzer raises the following issues for our review:

1. Did the [t]rial [c]ourt err by denying [Shatzer's] "Motion to [e]xclude [e]vidence" pertaining to approximately seven hours of jail calls made by [Shatzer?]

2. Did the [t]rial [c]ourt err in sustaining the Commonwealth's hearsay objection to text messages between the Decedent and a witness, Rene Sanders[?]

3. Did the [t]rial [c]ourt err in allowing the Commonwealth to introduce [call detail records (occasionally referred to hereinafter as "CDRs")] that were not properly authenticated[?]

4. Did the [t]rial [c]ourt err in allowing the Commonwealth to introduce text messages between the Decedent and [Shatzer] that occurred several days before the alleged transaction, and by allowing, over [Shatzer's] objection, a police officer's speculation as to what the text message[s] meant[?]

5. Did the [t]rial [c]ourt err in denying [Shatzer's] Motion for a Mistrial despite the fact that the Commonwealth, during cross-examination of an incarcerated witness, suggested that [Shatzer] and the incarcerated witness had opportunities to speak about the case and coordinate stories while in jail[?]

6. Were [Shatzer's] rights under Pa.R.Crim.P. [] 600 violated, as [Shatzer] was greatly prejudiced by the fact that he was appointed an attorney to whom the [Commonwealth] and [Shatzer's] counsel knew had a conflict of interest in his case, which caused numerous delays to his detriment[?]

Brief for Appellant at 4-5.

First, Shatzer argues that the trial court erred when it denied his Motion to exclude evidence pertaining to several phone calls that Shatzer had placed from jail while awaiting trial. *Id.* at 8. Shatzer claims that the content of the phone calls, wherein, *inter alia*, he referred to the Decedent as "being part of a maggot farm," demeaned Shatzer's character. *Id.* Shatzer asserts that the Commonwealth, by failing to provide Shatzer with the evidence until the week before trial, violated Pa.R.Crim.P. 573, which resulted in a "trial by ambush."

*Id.* at 9. According to Shatzer, "[t]he untimely manner in which the call records were provided to the [d]efense altered the defense strategy and … did not allow the [d]efense sufficient time to locate and contact potential witnesses to rebut the presumptions the Commonwealth was making as to the statements made during said calls." *Id.* at 8. Specifically, Shatzer claims that the Commonwealth's untimely disclosure of the phone calls "caused [Shatzer] to rethink whether [he] would testify on his own behalf, and was not afforded sufficient time to locate those who were on the other end of [his] calls to ascertain context to the calls and determine said persons' ability[] to testify." *Id.* at 10.

Pennsylvania Rule of Criminal Procedure 573 provides, in relevant part, as follows:

**Rule 573. Pretrial Discovery and Inspection**

* * *

(B) Disclosure by the Commonwealth

(1) *Mandatory*. In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

* * *

(f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence[.]

Pa.R.Crim.P. 573(B)(1)(f).

The trial court, in its Opinion, stated the following:

[I]t is clear the [trial c]ourt has discretion to determine the appropriate remedy based on the circumstances of the particular case. Here, we found it significant that the evidence was not in the possession of the Commonwealth until the day it was turned over to [Shatzer]. Before then, the recordings were in the possession of the jail, and [Shatzer] could have obtained and reviewed them as well. Further, we did not hear with any specificity how [Shatzer] suffered prejudice or how the defense strategy was altered as a result of the delayed disclosure. We found these circumstances distinguishable from those in [**Commonwealth v.**] **Hanford**[, 937 A.2d 1094 (Pa. Super. 2007),] and [**Commonwealth v.**] **Ulen**[, 650 A.2d 416 (Pa. 1994)], on which [Shatzer] relies. In neither of those cases was the defendant provided with the recordings of his jail calls prior to trial.

* * *

Here, … [Shatzer] was provided [with] the recordings the week before trial. Thus, if necessary, counsel could have altered its strategy before it was too late, as it was in [**Hanford** and **Ulen**]. Counsel failed, however, to provide more than vague assertions that he was unprepared to defend against the evidence on the tapes. Moreover, after a phone conversation with both parties when the issue was brought to the [c]ourt's attention, we directed the attorney for the Commonwealth to identify to [Shatzer] the specific portions of the recordings that were going to be used. The Commonwealth did so on Friday, [September] 27, 2019, three days before trial commenced. Though there was disagreement about exactly how long the identified portions were, it was undisputed that [d]efense [c]ounsel was provided the specific calls with the specific time frames the Commonwealth sought to introduce at trial. Thus, before trial, the defense was aware of the exact nature of this evidence.

Trial Court Opinion, 1/14/20, at 5-7 (some paragraphs combined, footnote and some citations omitted).

We discern no abuse of discretion by the trial court in its denial of Shatzer's Motion, as set forth above, and affirm on the basis of its Opinion with regard to this issue. *See id.* at 3-7.

Second, Shatzer argues that the trial court erred when it precluded the admission at trial of the Decedent's "sent" and "received" text messages from the night of the overdose on two separate occasions during his trial. Brief for Appellant at 11-14. Shatzer attempted to admit the text messages, which the Decedent had exchanged with a third party, purportedly to demonstrate that the Decedent had other avenues by which he could have acquired the narcotics that caused his overdose. *Id.* at 11-12. Initially, Shatzer proffered that the messages were admissible under a "*res gestae*" exception to the hearsay rule, and that the messages were instructive in order for the jury to hear "the complete story" of what occurred on the night of the overdose. *Id.* at 12-13.

Our review of a trial court's evidentiary ruling is conducted under an abuse of discretion standard. *Commonwealth v. Woeber*, 174 A.3d 1096, 1100 (Pa. Super. 2017). Where the evidentiary ruling involves a question of law, our scope of review is plenary. *Id.*

Pennsylvania Rule of Evidence 801 provides that hearsay evidence is "a statement that [] the declarant does not make while testifying at the current trial or hearing; and [is offered] in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801. Rule 802 prohibits the admission of

hearsay evidence, unless a listed exception to the hearsay rule applies. Pa.R.E. 802.

The concept of *res gestae* was a common law hearsay exception that included several, discrete exceptions to the hearsay rule: (1) declarations as to present bodily conditions; (2) declarations of present mental states and emotions; (3) excited utterances; and (4) declarations of present sense impressions. **Commonwealth v. Hood**, 872 A.2d 175, 182 (Pa. Super. 2005) (citing **Commonwealth v. Pronkoskie**, 383 A.2d 858, 860 (Pa. 1978)).

Here, Shatzer does not argue that the evidence at issue falls within any one of the four categories encompassed in the *res gestae* exceptions to the hearsay rule; rather, Shatzer argues that the text messages were necessary to allow the jury to discern the "full picture" of the events in question. **See** Brief for Appellant at 12-14.[2] However, this is not a recognized exception to the rule against hearsay evidence. **See** Pa.R.E. 803 (detailing the exceptions to the hearsay rule). Accordingly, because Shatzer failed to demonstrate that a recognized exception to the rule against hearsay applied to the text messages he sought to admit, the trial court did not abuse its discretion in sustaining the Commonwealth's objection. **See Pronkoskie**, **supra**.

_____

[2] We note that this argument would constitute a "special circumstance" in which prior bad acts evidence may be admitted under Pa.R.E. 404, rather than an exception to the hearsay rule under Pa.R.E. 801. **See Commonwealth v. Lark**, 543 A.2d 491, 497 (Pa. 1988) (explaining the *res gestae* exception to the prohibition against prior bad acts evidence).

- 7 -

Shatzer also argues that the trial court improperly sustained an objection related to the testimony of Detective Travis Carbaugh ("Detective Carbaugh"), the detective who investigated the Decedent's overdose. Brief for Appellant at 12-14. In a second attempt to introduce the text messages, Shatzer claimed that the evidence was admissible through the testimony of Detective Carbaugh. *Id.* at 12. Shatzer argues that the messages were admissible to rebut Detective Carbaugh's testimony about the Decedent's ability to access drugs from sources other than Shatzer. *Id.*

Pennsylvania Rule of Evidence 607 states that "[t]he credibility of a witness may be impeached by any evidence relevant to that issue, except as otherwise provided by statute or these rules." Pa.R.E. 607. The Comment to Rule 607 notes that any evidence offered to impeach the credibility of a witness must meet the threshold for relevancy under Pa.R.E. 401. Pa.R.E. 607 cmt.; *see also* Pa.R.E. 401 (stating that evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence[,] and [] the fact is of consequence in determining the action."). Further, our Supreme Court has noted that "reviewing courts should be wary of proffered bases for admission that may be pretexts for getting fact-bound evidence admitted for a substantive purpose." *Commonwealth v. Koch*, 106 A.3d 705, 715 (Pa. 2014).

We conclude that the trial court did not abuse its discretion in sustaining the Commonwealth's objection during Shatzer's cross-examination of

Detective Carbaugh. Shatzer purportedly sought to introduce the text messages to dispute Detective Carbaugh's testimony that the Decedent had not discussed drug use with anyone other than Shatzer shortly before the overdose. Brief for Appellant at 12. However, our review of the record discloses that Detective Carbaugh had not made that representation. Rather, Detective Carbaugh testified that he found no indication that the Decedent had met anyone to buy controlled substances, other than Shatzer, in close temporal proximity to the overdose. N.T., 10/1/19, at 140. Accordingly, the text messages, which purportedly show the Decedent discussing drug use with parties other than Shatzer, was not relevant to Detective Carbaugh's testimony that the Decedent did not discuss drug sales with anyone other than Shatzer in the time surrounding his death. Consequently, the trial court did not abuse its discretion in precluding the introduction of the text messages on the basis of relevance. *See* Pa.R.E. 607(b); Pa.R.E. 401.

In his third claim, Shatzer argues that the trial court erred when it improperly admitted evidence from the Decedent's cell phone, as obtained from the Decedent's cellular service provider. Brief for Appellant at 14. Shatzer claims that the police officer's testimony that the phone records were true and accurate did not constitute proper authentication under Pa.R.E. 901 and 902, as the officer could not personally testify as to how the phone records were generated and the process undertaken by the phone company. *Id.* at 14-16. Shatzer alleges that this improper authentication was not harmless

error, because the phone records were the only non-controverted evidence connecting the Decedent to Shatzer on the night of the overdose. *Id.* at 16.

"Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *In Interest of F.P.*, 878 A.2d 91, 94 (Pa. Super. 2005).

Authentication of evidence is codified in Pa.R.E. 901, which provides, in pertinent part, that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Pa.R.E. 901(a). Testimony of a witness with personal knowledge that a matter is what it is claimed to be can be sufficient. *See* Pa.R.E. 901(b)(1). Evidence that cannot be authenticated by a knowledgeable person, pursuant to subsection (b)(1), may be authenticated by other parts of subsection (b), including circumstantial evidence pursuant to subsection (b)(4). *See* Pa.R.E. 901(b)(4) (stating that authentication may be satisfied by "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances."); *see also Koch*, 106 A.3d at 712-13 (stating that evidence may be authenticated by circumstantial evidence). "[A]uthentication generally entails a relatively low burden of proof; in the words of Rule 901 itself, simply evidence sufficient to support a finding that the item is what the proponent claims." *Commonwealth v. Murray*,

174 A.3d 1147, 1157 (Pa. Super. 2017) (citation and quotation marks

omitted).

The trial court addressed the authentication of the phone records at trial

as follows:

> [The Commonwealth] sought to authenticate the phone records by certification. Specifically, the Commonwealth entered into evidence a series of documents from Sprint, Commonwealth's Exhibit 18, that were attached to the [phone] records received by law enforcement. We found the documents to indicate the records' reliability for several reasons. The [phone] records and the documents were sent in response to a court [O]rder for the records. The cover page is dated September 13, 2017, approximately a week after [Decedent]'s death, while law enforcement was actively investigating [Decedent]'s death. The cover page was addressed specifically to Scott Mummert, Franklin County District Attorney, and indicated it was sent pursuant to request in case number MD 3172017. It was signed by Donesha Robinson from Subpoena Compliance at Sprint Corporate Security, with her contact information also listed therein.
>
> The documents additionally provide account details, subscriber details, and other identifying information for the [Decedent]'s account. Several of the documents describe the process used by Sprint to compile the call information and produce the records ….
>
> Further, the Commonwealth showed Detective Carbaugh the documents and questioned him, outside the presence of the jury, as to their authenticity. Detective Carbaugh testified he was aware a request had been made for CDRs for the [Decedent]'s phone; he indicated the request was signed by a judge of the Court of Common Pleas in Franklin County. He identified Commonwealth's Exhibit 18 as the standard documents the police receive whenever they request CDRs from the phone company. Detective Carbaugh further stated he reviewed the CDRs and determined the information provided therein coincides with everything he discovered during the investigation and heard at trial. He concluded he has no doubt the CDRs being offered were those requested by the court order. Based on the foregoing, we

concluded the CDRs were sufficiently trustworthy and reliable, and overruled [Shatzer]'s objection for lack of authentication.

Trial Court Opinion, 1/14/20, at 13-15 (some paragraphs combined).

We conclude that the trial court did not abuse its discretion in determining that the CDRs were properly authenticated through Detective Carbaugh's testimony, and affirm on the basis of the trial court's Opinion, as set forth above, with regard to this claim. *See id.*; *see also Koch*, 106 A.3d at 712-13.[3]

In his fourth claim, Shatzer argues that the trial court erred when it admitted several text messages between the Decedent and Shatzer prior to the night of the overdose. Brief for Appellant at 17. Shatzer claims that several of the text messages were inadmissible as evidence of prior bad acts (*i.e.*, that Shatzer had delivered narcotics to the Decedent on other occasions). *Id.* at 17-18. Shatzer asserts that the trial court erred when it found that the text messages at issue were part of a single transaction, rather than two separate transactions. *Id.* Shatzer further claims that the text

_____

[3] Further, as the trial court noted in its Opinion, even if the phone records were improperly authenticated, it would constitute harmless error, as the phone records only contained phone numbers, the time and length of communications, and whether the communications were a call or a text. Trial Court Opinion, 1/4/20, at 15. The Commonwealth presented other sufficiently-authenticated evidence, from the Decedent's cell phone and in the form of witness testimony, connecting Shatzer to the Decedent near the time of his death. *Id.* at 15-17.

messages were not properly admitted under Pa.R.E. 404. Brief for Appellant at 18-19.

Rule 404 generally prohibits "[e]vidence of a crime, wrong, or other act" when such evidence is offered to show "that on a particular occasion the person acted in accordance with the character" shown by that crime, wrong, or other act. Pa.R.E. 404(b)(1). There are, however, exceptions to this prohibition, and "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2).

Our Supreme Court has consistently recognized that admission of distinct bad acts may be proper where it is part of the history or natural development of the case, *i.e.*, the *res gestae* exception. **Commonwealth v. Sherwood**, 982 A.2d 483, 497 (Pa. 2009); **Lark**, **supra**. "The '*res gestae*' exception to the general proscription against evidence of other crimes, is also known as the "complete story" rationale, *i.e.*, evidence of other criminal acts is admissible to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." **Lark**, **supra** (citations and quotation marks omitted).

At trial, the Commonwealth sought to introduce text messages sent between the Decedent and Shatzer the day before the Decedent's overdose. Specifically, at 7:51 p.m., on September 4, 2017, the Decedent texted

Shatzer, "I can't talk but I still need ps if u got any let me know plz[.]"[4]  N.T., 10/1/19, at 139.  At 7:52 p.m., Shatzer responded, "I have[,] call me[.]"  *Id.* At 7:55 p.m., the Decedent sent, "okay, you got the same and 15 of them[.]" *Id.*  At 7:56 p.m., the Decedent texted again, "give me a min I'll walk outside[.]"  *Id.*

The record does not reveal any further communication between the Decedent and Shatzer until the next day, on September 5, 2019, at 6:33 p.m., when the Decedent texted Shatzer, "On way can u do me 4 100 just asking I'm come down[.]"  *Id.* at 134.  Additionally, Shatzer called the Decedent at 7:05 p.m. for approximately three minutes; at 9:22 p.m., the Decedent called Shatzer for approximately one minute; at 10:11 p.m., Shatzer called the Decedent for approximately one minute; at 10:26 p.m., the Decedent called Shatzer for approximately 30 seconds; and at 10:29 p.m., the Decedent called Shatzer again for approximately 30 seconds.  *Id.* at 130-31.  The trial court concluded that the text messages were part of the same, single, transaction that ultimately resulted in the overdose, and overruled Shatzer's objection. *Id.* at 137-38.

Based upon the foregoing, the trial court did not abuse its discretion when it concluded that the September 4, 2019 text messages were admissible as part of the same transaction. *See Sherwood*, *supra*; *Lark*, *supra*.

---

[4] Detective Carbaugh testified that, based on his experience, "ps" was most likely a reference to pills.  N.T., 10/1/19, at 139.

In his fifth claim, Shatzer argues that the trial court erred in denying his Motion for a Mistrial, after the Commonwealth, during its cross-examination of a defense witness, stated that Shatzer was in jail as the trial was taking place. Brief for Appellant at 19. Shatzer alleges that the Commonwealth's error in questioning the witness, so as to elicit evidence of Shatzer's incarceration, caused him prejudice and warranted a mistrial. *Id.* at 19-20. Further, Shatzer claims that the trial court placed him in a "situation of juxtaposition," wherein any curative instruction would have brought the jury's attention to the remark. *Id.* at 21.

> [T]he decision to declare a mistrial is within the sound discretion of the trial court and will not be reversed absent a flagrant abuse of discretion. A mistrial is an extreme remedy that must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial.

*Commonwealth v. Szakal*, 50 A.3d 210, 218 (Pa. Super. 2012).

It is well settled that evidence of crimes unrelated to the charge for which a defendant is being tried is generally inadmissible. *Commonwealth v. Martin*, 387 A.2d 835, 838 (Pa. 1978). However, "there is no rule in Pennsylvania which prohibits reference to a defendant's incarceration awaiting trial or arrest for the crimes charged." *Commonwealth v. Johnson*, 838 A.2d 663, 680 (Pa. Super. 2003); *see also Commonwealth v. Wilson*, 649 A.2d 435, 445-46 (Pa. 1994) (determining that a reference to the defendant being in prison was not prejudicial when the reference "did not either expressly or by reasonable implication convey the fact of a prior criminal offense

unrelated to the criminal episode for which [the defendant] was then on trial.") (citation omitted).

We are further cognizant that defense counsel may decide to forego curative instructions to avoid drawing attention to the prejudicial remark. ***See Commonwealth v. Johnson***, 668 A.2d 97, 104 (Pa. 1995) (stating that, when the trial court offered a curative instruction and defense counsel refused, "[a]ppellant [could not] claim the trial court erred in refusing to take an action when the basis for the court's inaction was counsel's failure to pursue the offer of the curative instruction."). "When counsel chooses to refuse appropriate curative instructions for this legitimate tactical reason, the defense may not plead prejudice on appeal." ***Commonwealth v. Miller***, 481 A.2d 1221, 1223 (Pa. Super. 1984) (citation omitted).

Here, the Commonwealth questioned the witness during cross-examination regarding his recent contact with Shatzer, resulting in the following exchange:

> [Commonwealth:]  You had a decent amount of time to see [Shatzer] lately; correct?
>
> [Witness:]  They won't let me around him.
>
> [Commonwealth:]  All right.  What do you mean they won't let you around him?
>
> [Witness:]  They have us on separation so we can't, you know, talk, I guess.

N.T., 10/2/19, at 54.

Although the witness's reference to Shatzer being "on separation" could have been interpreted by the jury as a reference to Shatzer being in jail, there was no testimony giving rise to an inference that Shatzer was detained for other criminal conduct. Accordingly, we discern no abuse of the trial court's discretion in denying Shatzer's Motion for a Mistrial. **See Johnson**, **supra**; **Wilson**, **supra**. Further, because Shatzer specifically refused the trial court's offer to provide a curative instruction, and a curative instruction could have allayed any prejudice, Shatzer may not now raise prejudice on appeal. **See Miller**, **supra**.

In his sixth claim, Shatzer argues that his rights under Pa.R.Crim.P. 600 were violated. Brief for Appellant at 21. Shatzer claims that he was deprived of a right to a trial within 365 days of his January 26, 2018, arrest and detention, as his trial began on September 30, 2019, 616 days after his arrest. *Id.* at 21-22. Specifically, Shatzer directs our attention to the 209-day period between his arrest date and August 23, 2018, the date that Shatzer's original appointed counsel withdrew from representation. Shatzer states that, during this time, his appointed defense counsel suffered from a conflict of interest known to the Commonwealth. *Id* at 22. Therefore, Shatzer argues, the delay was attributable to the Commonwealth. *Id.*

Rule 600 provides, in relevant part, as follows:

**Rule 600. Prompt Trial**

(A) Commencement of Trial; Time for Trial

(1) For the purposes of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or nolo contendere.

(2) Trial shall commence within the following time periods.

> (a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

* * *

(B) Pretrial Incarceration. Except in cases in which the defendant is not entitled to release on bail as provided by law, no defendant shall be held in pretrial incarceration in excess of

(1) 180 days from the date on which the complaint is filed[.]

* * *

(D) Remedies

(1) When the defendant has not been brought to trial within the time periods set forth in paragraph (A), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated. A copy of the motion shall be served on the attorney for the Commonwealth concurrently with filing. The judge shall conduct a hearing on the motion.

(2) Except in case in which the defendant is not entitled to release on bail as provided by law, when a defendant is held in pretrial incarceration beyond the time set forth in paragraph (B), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the defendant be released immediately on nominal bail subject to any nonmonetary conditions of bail imposed by the court as permitted by law. A copy

of the motion shall be served on the attorney for the Commonwealth concurrently with filing. The judge shall conduct a hearing on the motion.

Pa.R.Crim.P. 600.

In this case, Shatzer failed to file a motion to dismiss his charges, pursuant to Rule 600(D)(1), prior to the commencement of his trial.[5] Thus, the trial court was deprived of the opportunity to conduct a hearing on, or even consider, Shatzer's Rule 600 claim. Consequently, Shatzer's claim is waived.[6] **See Commonwealth v. Brock**, 61 A.3d 1015, 1020 (Pa. 2013) (stating that "a motion to dismiss pursuant to [Rule] 600 must be made in writing, and a copy of such motion must be served on the Commonwealth's attorney"); **Commonwealth v. Fooks**, 497 A.2d 1346, 1350 (Pa. Super. 1985) (determining that "the appellee's failure to file a timely motion to

---

[5] Shatzer argues that his right to a speedy trial was violated under Rule 600(A). **See** Brief for Appellant at 22 (arguing that "Rule 600 … demand[s] *dismissal* of the charges, or alternatively [a] remand to conduct an evidentiary hearing as to the cause and effect of the inappropriate appointment." (emphasis added)). The remedy for a violation of paragraph (A) is dismissal. By contrast, the remedy afforded for a violation paragraph (B) is release on nominal bond before trial. **See Commonwealth v. Murray**, 879 A.2d 309, 314 (Pa. Super. 2005) (stating that "other than release on nominal bail, no other remedy is prescribed for defendants incarcerated for less than three hundred sixty-five days, even if they were not, in fact, released on nominal bail.").

[6] Even if Shatzer had properly filed a motion to dismiss the charges pursuant to Rule 600, we would conclude that his claim lacks merit. Shatzer's counsel had requested to withdraw from representation based upon a conflict of interest. Therefore, the ensuing delay was attributable, in part, to Shatzer, as he was unprepared to proceed, given the lack of representation. As such, we would conclude that the delay was not attributable to the Commonwealth.

dismiss prior to the commencement of trial renders his Rule [600] claim waived, and, in effect, super[s]edes any alleged impropriety on the part of the Commonwealth.").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/15/2020