**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CALVIN JAMAR HILL-GAMBLE | : | |
| | : | |
| Appellant | : | No. 58 MDA 2020 |

Appeal from the PCRA Order Entered December 19, 2019
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0005209-2014

BEFORE:   KUNSELMAN, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED SEPTEMBER 10, 2020**

Appellant Calvin Jamar Hill-Gamble files this *pro se* appeal from the order of the Court of Common Pleas of Dauphin County denying his petition pursuant to the Post-Conviction Relief Act (PCRA).[1]  Appellant argues that he is entitled to a new trial due to the ineffectiveness of his trial counsel.  After careful review, we affirm the order denying Appellant's petition.

On August 22, 2014, at approximately 3:12 a.m., Officer Matthew Corby of the Swatara Police Department observed a silver Chrysler 300 with a black driver's side quarter panel.  Notes of Testimony (N.T.), Trial, 10/27/15, at 42-44, 322-23.  Officer Corby noticed that this vehicle that matched the unique description of a car that had been reported stolen and

_____

[*] Former Justice specially assigned to the Superior Court.
[1] 42 Pa.C.S.A. §§ 9541-9546.

observed that the vehicle's registration light was burned out. N.T. at 44-45. When Officer Corby ran the license plate, he discovered the vehicle had not been reported stolen, but its registration was expired. N.T. at 45.

Officer Corby subsequently activated the overhead lights of his patrol car and initiated a traffic stop of the vehicle. The vehicle did not immediately stop and "hastily" pulled into the parking lot of the Ivy Ridge Apartments, after which the three occupants attempted to escape the vehicle. N.T. at 52, 54, 61. When Officer Corby commanded the occupants to remain in the vehicle and pulled out his firearm, the occupants put their hands up but fled the scene, leaving the doors of the vehicle open and the engine running. N.T. at 52-53.

While Officer Corby caught up to the driver, Antoine Dayd, and placed him under arrest, Officer Corby was unable to apprehend the other two occupants of the vehicle. N.T. at 56-59. Officer Corby indicated that Dayd had told him that the other occupants of the vehicle were "J and Mark." N.T. at 110.

Thereafter, Officer Corby looked into the rear seat window of the vehicle and observed a clear bag containing a white, chalky substance in the backseat cup holder, which Officer Corby suspected was cocaine. N.T. at 61-62. A search of the vehicle revealed several boxes of bullets, three ski masks, binoculars, twenty bags of heroin, a digital scale, a driver's license update card with Appellant's name, and three firearms (two of which were determined to be stolen). N.T. at 61-88, 94-95.

In addition, Officer Corby discovered a Samsung Galaxy S5 cell phone in the front passenger seat door handle. N.T. at 73, 86-87. After Officer Corby obtained a search warrant for the Galaxy S5 phone, he discovered that the phone number associated with this phone was 717-736-6647 and that this number was transferred to another phone on August 23, 2014, the day after the Galaxy S5 had been seized in the traffic stop.

While Officer Corby was only able to apprehend the driver of the vehicle, Antoine Dayd, Officer Corby observed the other two occupants and described them as black males that appeared to be in their 20s or early 30s. N.T. at 53-58, 91. Officer Corby recalled that the front-seat passenger was wearing a blue collared shirt and the rear passenger was wearing a black shirt. N.T. at 53, 122. Officer Corby saw the front seat passenger running towards the apartment complex and then lost sight of him. N.T. at 53.

Officer Corby also determined that the vehicle was registered to Appellant. N.T. at 87-88. When Officer Corby ran the vehicle's registration and saw the picture for the registered owner of the vehicle, Officer Corby found this person resembled the front seat passenger that had fled from Appellant's vehicle that evening. N.T. at 91. Officer Corby admitted that he could not "say with 100% certainty that was definitely the same person." N.T. at 91.

On August 25, 2014, Appellant contacted the Swatara Police Department and requested to remove items from his vehicle. N.T. at 91-93. In doing so, Appellant provided his house phone number and also his

- 3 -

mother's phone number as he claimed that he did not have a cell phone. N.T. at 92-93. Thereafter, Officer Corby obtained and executed an arrest warrant for Appellant and found him to be in possession of a Samsung Galaxy S3 phone, which had the same phone number as the Galaxy S5 that had been left in Appellant's vehicle. N.T. at 92-94.

Appellant was charged with possession of a controlled substance with intent to distribute (PWID), several violations of the Uniforms Firearms Act (VUFA), and various offenses related to his possession of the drugs, guns, and paraphernalia that was discovered in his vehicle. At the time of the vehicle stop, Appellant did not have a license to carry a firearm as he was not permitted to possess firearms due to his prior criminal convictions.

Appellant proceeded to a jury trial at which Officer Corby testified to the aforementioned events. The Commonwealth also offered the testimony of Joseph Sierra, a custodian of records for T-Mobile, who indicated that the subscriber information for the number 717-736-6647 showed that the account was prepaid, which did not require the user to provide name or address verification. N.T. at 214-17. Sierra also testified that a review of the device history showed that the aforementioned phone number was switched from one device to another sometime between August 22-23, 2014. N.T. at 218-20. The last outgoing message from the former phone was sent at 2:56 a.m. on August 22, 2014, twenty minutes before the stop occurred. N.T. at 217-18.

In addition, several individuals who resided at the Ivy Ridge Apartments on the day of the traffic stop in question testified at trial. N.T. at 60, 97. Michelle Stolle testified that she lived on the third floor of the apartment complex and was getting ready to go into work for 4 a.m. on August 22, 2014 when she saw red flashing lights from a police car outside her bathroom window. N.T. at 115-118. When she looked out the window, she saw a "black gentleman in a black shirt running across the lawn." N.T. at 118.

Stolle exited her apartment to go report her observation to the officers and descended the open-air stairway to the second floor. Stolle stopped at the second floor balcony and observed an officer with his firearm drawn. N.T. at 119. At that point, Stolle heard a nearby voice say, "It's fine." N.T. at 120. When Stolle looked to her left, she observed a "lighter-skinned" African-American gentleman, who was "shorter than normal" and was wearing a blue polo shirt. N.T. at 120, 126-27. Stolle noticed that this man was approximately seven feet away and talking to an unidentified occupant of Apartment #203. N.T. at 120. Stolle did not believe this encounter had any significance until she heard Officer Corby indicate that one of the men who fled from the vehicle was wearing a blue collared shirt. N.T. at 122.

Appellant's half-sister, Brittany Hill, who shares the same father with Appellant, testified that she lived with her mother at Apartment #203 of the Ivy Ridge Apartments on August 22, 2014. N.T. at 141-143. Hill recalled that in the early morning hours, her mother woke her up to tell her that the

police were outside with a patrol car and flashing lights and were looking at Appellant's car. N.T. at 142-43. Hill indicated that she went outside to talk to police and tell them the vehicle belonged to her brother. N.T. at 145. Both Hill and her mother, Caroline Everson, denied seeing Appellant that night. N.T. at 152, 312-13.

Appellant testified on his own behalf, claiming that he was not in his car when the vehicle was pulled over by Officer Corby. N.T. at 345. Appellant asserted that he had been drinking heavily on the night in question, asked Antoine Dayd to drive him home in his vehicle, and went to bed when he got home. N.T. at 338-42. Appellant claimed that he allowed Dayd to keep his vehicle that evening so that Dayd could fix the bumper and front driver's side of his vehicle the next morning. N.T. at 333-36. The next morning, Appellant transferred his number to a new phone as he believed he had lost his phone due to the fact that he was drunk. N.T. at 342-44.

Appellant described himself as being of "mixed" race; while he admitted that his skin tanned well in the summer, he admitted that he was "light skinned" at the time of trial. N.T. at 326-37. While on direct examination, Appellant claimed to be 5'9", he admitted on cross-examination that he "gave himself an inch" and conceded that his PennDOT license information indicates he was 5'8." N.T. at 351-52. Appellant asserted that he was not the individual Dayd referred to as "J" that was in his vehicle on the night of Officer Corby's stop. N.T. at 353-54. While

Appellant claimed that his friends would referred to him by his nickname "Curly," Appellant admitted his middle name is Jamar.  N.T. at 330-31.

After the trial concluded, the jury convicted Appellant of three counts of firearms not to be carried without a license, and one count each of persons not to possess firearms, receiving stolen property, possessing instruments of crime, PWID, possession of a controlled substance, and possession of drug paraphernalia.[2]  On January 26, 2016, Appellant was sentenced to an aggregate term of ten to twenty years' imprisonment.

On February 5, 2016, Appellant filed a post-sentence motion, arguing *inter alia*, that the trial court did not adequately set forth its reasons for imposing its sentence on the record.  On February 29, 2016, the trial court granted the post-sentence motion in part and vacated his sentence, agreeing that Appellant was entitled to be resentenced at a hearing at which the trial court fully set forth its rationale for imposing its sentence.

On March 22, 2016, the trial court resentenced Appellant to an aggregate term of ten to twenty years' imprisonment.  On January 17, 2017, this Court affirmed the judgment of sentence and on July 18, 2017, the Supreme Court denied Appellant's petition for allowance of appeal.  ***Commonwealth v. Hill-Gamble***, 678 MDA 2016 (Pa.Super. 2017)

---

[2] 18 Pa.C.S.A. §§ 6106(a)(1), 6105(a)(1), 3925(a), 907(a), 35 P.S. §§ 780–113(a)(30), (a)(16), and (a)(32), respectively.

(unpublished memorandum), *appeal denied*, 642 Pa. 76, 169 A.3d 1052 (2017).

On September 27, 2018, Appellant filed a *pro se* PCRA petition.[3] The PCRA court subsequently appointed Jonathan Crisp, Esquire, who filed an amended petition on Appellant's behalf. On November 25, 2019, the PCRA court filed notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.A.P. 907. Thereafter, on December 19, 2019, the PCRA court dismissed Appellant's petition.

On January 6, 2020, Appellant filed a *pro se* notice of appeal. On January 15, 2010, Attorney Crisp filed a notice of appeal. On January 24, 2020, this Court filed a *per curiam* order directing the trial court to hold a **Grazier** hearing to determine whether Appellant wished to proceed *pro se* or with the assistance of Attorney Crisp.[4] After a hearing, the PCRA court permitted Appellant to proceed *pro se* on appeal.

Appellant raises the following issues for review on appeal, verbatim:

I.     Did the PCRA court [err] when it held that trial counsel was not ineffective for failing to object to and file a motion in

---

[3] Appellant's petition meets the PCRA timeliness requirements. Generally, a PCRA petition "including a second or subsequent petition, shall be filed within one year of the date the judgment of sentence becomes final." 42 Pa.C.S.A. § 9545(b)(1). A judgment of sentence becomes final at the conclusion of direct review or the expiration of the time for seeking the review. 42 Pa.C.S.A. § 9545(b)(3).
[4] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998) (requiring on-the-record inquiry to determine whether waiver of counsel is knowing, intelligent, and voluntary).

limine to preclude the prosecutor from using unauthenticated Facebook messages in an attempt to connect a phone number to [Appellant] which denied him his 14th Amendment rights.

II.    Did the PCRA court [err] when it held that trial counsel was not ineffective for introducing prejudicial and irrelevant testimony of other crimes by having [Appellant] testify that he committed other crimes similar to the one he stood trial for?

III.    Did the PCRA court [err] when it held that trial counsel was not ineffective in failing to object to the trial court's failure to provide the definition and adequately explain constructive possession during it's instruction to the jury which denied [Appellant] his 14th Amendment rights.

IV.    Did the PCRA court [err] when it held that trial counsel was not ineffective for failing to request a judgment of acquittal due to the prosecutor presenting evidence consistent with two opposing propositions. And the evidence was insufficient as a matter of law to sustain the verdict.

Appellant's Brief, at 5 (reordered for ease of review).

Our standard of review is well-established:

[o]ur review of the grant or denial of PCRA relief is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. **Commonwealth v. Cox**, 636 Pa. 603, 146 A.3d 221, 226 n.9 (2016). The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions. **Commonwealth v. Burton**, 638 Pa. 687, 158 A.3d 618, 627 n.13 (2017).

**Commonwealth v. Small**, 647 Pa. 423, 440–41, 189 A.3d 961, 971

(2018). Further,

A petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to PCRA relief, and no purpose would be served by any further proceedings.

- 9 -

***Commonwealth v. Postie***, 200 A.3d 1015, 1022 (Pa.Super. 2018) (*en banc*) (citation omitted).

As noted above, Appellant raises various arguments in which he claimed he is entitled to new trial due to the ineffectiveness of his trial counsel. We are guided by the following principles:

> [a]s originally established by the United States Supreme Court in ***Strickland v. Washington***, 466 U.S. 668, [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984), and adopted by Pennsylvania appellate courts, counsel is presumed to have provided effective representation unless a PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome at trial if not for counsel's error.

> ***Commonwealth v. Wantz***, 84 A.3d 324, 331 (Pa.Super. 2014) (citations omitted). "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." ***Commonwealth v. Daniels***, 600 Pa. 1, 963 A.2d 409, 419 (2009).

***Commonwealth v. Selenski***, 228 A.3d 8, 15 (Pa.Super. 2020).

First, Appellant claims the PCRA court erred in denying his claim that his trial counsel was ineffective for failing to argue that the prosecution should have been precluded from admitting unauthenticated Facebook messages associated with the phone found in Appellant's vehicle and the phone in Appellant's possession upon his arrest as they unfairly suggested that Appellant was engaged in illegal activities.

Pennsylvania Rule of Evidence 901 sets forth the requirement that evidence must be authenticated before it is admitted. Rule 901(a) provides that "[t]he proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). Rule 901(b) provides a non-exhaustive list of evidence that could be used to satisfy the authentication requirement. This list includes "testimony of a Witness with Knowledge … that an item is what it is claimed to be." Pa.R.E. 901(b)(1). Evidence can also be authenticated by circumstantial evidence as set forth in Rule 901(b)(4): "*Distinctive Characteristics and the Like.* The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Pa.R.E. 901(b)(4).

Our court has rejected the notion that electronic communication is inherently unreliable due to its relative anonymity and the difficulty connecting the electronic message to a specific author with certainty. ***In re F.P.***, 878 A.2d 91, 95 (Pa.Super. 2005). This Court has emphasized that the "same uncertainties exist with traditional written documents [as] a signature can be forged; a letter can be typed on another's typewriter; distinct letterhead stationary can be copied or stolen." ***Id***.

As such, this Court declined to construct separate rules to evaluate the admissibility of instant messages and other forms of electronic communication, but emphasized that such messages can be authenticated within the framework set forth in Pa.R.E. 901 and precedential law. ***Id***.

"[E]mails and text messages are documents and subject to the same requirements for authenticity as non-electronic documents generally." *Commonwealth v. Koch*, 39 A.3d 996, 1005 (Pa.Super. 2011), *affirmed by an equally divided court*, 630 Pa. 374, 106 A.3d 705 (2014).

The question of the admissibility of instant messages and other electronic communication must be "evaluated on a case-by-case basis as any other document to determine whether or not there has been an adequate foundational showing of their relevance and authenticity." *In re F.P.*, 878 A.2d at 96. Further, "[a]uthentication generally entails a relatively low burden of proof; in the words of Rule 901 itself, simply 'evidence sufficient to support a finding that the item is what the proponent claims.'" *Commonwealth v. Murray*, 174 A.3d 1147, 1156–57 (Pa.Super. 2017) (quoting *Koch*, 630 Pa. 374, 106 A.3d 705, 713 (2014) (Castille, C.J., in support of affirmance) (quoting Pa.R.E. 901(a)).

In this case, the prosecution presented evidence that Appellant created the relevant social media account. There is no dispute in this case that Appellant was the owner of both the Samsung Galaxy S5 phone recovered from Appellant's vehicle and the Galaxy S3 phone found in Appellant's possession upon his arrest. An extraction report revealed that both phones were associated with the relevant Facebook account belonging to "Calvin Hill." N.T. at 229-233.

In addition, the messages contained contextual clues that corroborated the prosecution's claim that Appellant was the author of the messages.

- 12 -

Appellant specifically listed his first name in a Facebook message he sent on the day of the traffic stop; this conversation was contained on Appellant's cell phone. N.T. at 233-34. In another Facebook message when an individual messaged "Calvin" asking for his phone number, the author of the messages texted the number 736-6647, which is the number associated with both of Appellant's phones. N.T. at 233.

Another conversation revealed Appellant's identity as the author of the message by referring to the preceding stop of Appellant's vehicle and the confiscation of his stolen weapons. When an individual named "Uncle Carl," sent a Facebook message on August 28, 2014, to Appellant's account asking if Appellant "had some heat," a subsequent outgoing message sent eighteen minutes later states "Nah. Lost it all wit my car." N.T. at 240. The prosecution presented testimony that the term "heat" can be used as slang for a firearm. N.T. at 296. As such, this message's reference to the "loss" of weapons from the author's car substantiates that Appellant had written these messages about Officer Corby's seizure of stolen firearms from his car several days earlier.

Based on this evidence, we find that there was sufficient evidence to authenticate the Facebook messages such that their admission was proper. As such, there is no arguable merit to Appellant's argument that trial counsel was ineffective in failing to object to the admission of the Facebook messages in question.

Even assuming Appellant's claim had merit, Appellant has failed to show prejudice to the effect that there was a reasonable probability of a different outcome at trial if not for counsel's error. **See Selenski**, **supra**. Appellant concedes that Officer Corby effectuated a lawful stop of his vehicle, which contained crack cocaine, heroin, stolen firearms, drug paraphernalia and Appellant's cell phone (which was located in the front passenger door). Officer Corby testified that the front-seat passenger who fled towards the Ivy Ridge apartment complex was wearing a blue collared shirt and resembled Appellant's picture associated with the vehicle's registration information.

In addition, a disinterested witness indicated that at the time of stop of Appellant's vehicle, she observed a light-skinned African-American male wearing a blue polo talking to the occupants of Ivy Ridge Apartment #203, where Appellant's half-sister lived with her mother. As such, the prosecution's circumstantial evidence led to a strong inference that Appellant was the front seat passenger that fled from his vehicle upon the vehicle stop in question.

Given the prosecution's substantial evidence against Appellant, we cannot find that the outcome of Appellant's trial would have been different had trial counsel objected to the admission of the Facebook messages in question. Accordingly, the PCRA court did not err in denying this claim of ineffectiveness.

Second, Appellant argues that the PCRA court erred in dismissing his claim that trial counsel was ineffective in asking him on the witness stand about his past history of dealing drugs and participating in illegal activities. It is well-established that:

> [t]he decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

*Commonwealth v. Nieves*, 560 Pa. 529, 533–34, 746 A.2d 1102, 1104 (2000).

As an initial note, Appellant does not develop a claim on appeal that trial counsel was ineffective in advising Appellant with respect to his decision to testify on his own behalf. Our review of the record shows that the PCRA court conducted an oral colloquy to determine whether Appellant's choice to testify was voluntary, knowing, and intelligent. N.T. at 169-171. Appellant does not argue that his decision to testify was unknowing or involuntary.

Rather, Appellant criticizes trial counsel for subjecting him to a line of questioning about his past involvement in selling drugs and firearms. However, Appellant fails to acknowledge that the prosecution had already admitted evidence that suggested that Appellant had sold drugs and illegal firearms.

After trial counsel used this line of questioning, Appellant was able to stress to the jury that he had never sold heroin or cocaine, but only sold marijuana. While Appellant admitted to being a "middleman" in the sale of illegal firearms, Appellant expressly denied that the cocaine, heroin, and stolen firearms seized from his vehicle belonged to him.

In choosing to testify, Appellant was also able to provide support for defense counsel's theory that Appellant was not in his vehicle at the time of Officer Corby's stop and offer an explanation that he had allowed his co-defendant Dayd to borrow his vehicle to repair it on the next day.

We find that Appellant has not proven he was prejudiced by counsel's line of questioning about Appellant's involvement in selling marijuana and facilitating illegal firearm sales. Appellant's concession of certain illegal behavior allowed him to explain the admitted instant messages suggesting he sold drugs and firearms and to deny possessing and/or selling the cocaine, heroin, and illegal firearms found in his vehicle. Moreover, as noted above, the prosecution presented substantial evidence of Appellant's guilt.

As a result, we cannot conclude that Appellant has proven that the outcome of his proceeding would have been different had trial counsel refrained from asking Appellant to concede certain aspects of his past criminal behavior. *See Selenski*, *supra*. As such, the PCRA court did not err in denying this claim of ineffectiveness.

Third, Appellant asserts that the PCRA court erred in dismissing his claim that trial counsel was ineffective in failing to object to the trial court's

failure to provide a jury instruction on constructive possession. In reviewing

this challenge, we are guided by the following principles:

> [A] trial court possesse[s] broad discretion in phrasing its
> instructions to the jury and [is] permitted to choose its own
> wording so long as the law [is] clearly, adequately and
> accurately presented to the jury for consideration.
> ***Commonwealth v. (Roy) Williams***, 557 Pa.207, 732 A.2d
> 1167, 1187 (1999); ***Commonwealth v. Hawkins***, 549 Pa. 352,
> 701 A.2d 492, 511 (1997), *cert. denied,* 523 U.S. 1083, 118
> S.Ct. 1535, 140 L.Ed.2d 685 (1998). Furthermore, a trial court
> need not accept counsel's wording for an instruction, as long as
> the instruction given correctly reflects the law. ***(Roy) Williams***,
> 732 A.2d at 1187; ***Commonwealth v. Ohle***, 503 Pa. 566, 470
> A.2d 61, 70 (1983). It is axiomatic that, in reviewing a
> challenged jury instruction, an appellate court must consider the
> charge in its entirety, not merely isolated fragments, to ascertain
> whether the instruction fairly conveys the legal principles at
> issue. ***Commonwealth v. Jones***, 546 Pa. 161, 683 A.2d 1181,
> 1196 (1996). Instructions will be upheld if they adequately and
> accurately reflect the law and are sufficient to guide the jury
> properly in its deliberations. ***Commonwealth v. Rivera***, 565
> Pa. 289, 773 A.2d 131, 139 (2001); ***Commonwealth v.***
> ***Gibson***, 553 Pa. 648, 720 A.2d 473, 481 (1998).

***Commonwealth v. Rainey***, 593 Pa. 67, 112–13, 928 A.2d 215, 242–43

(2007).

Specifically, with respect to constructive possession, this Court has

held that:

> [c]onstructive possession is a legal fiction, which is invoked
> when actual possession at the time of arrest cannot be shown,
> but there is a strong inference of possession from the facts
> surrounding the case. Constructive possession has been defined
> as "conscious dominion," which requires two elements: the
> power to control the contraband and the intent to exert such
> control.

- 17 -

*Commonwealth v. Battle*, 883 A.2d 641, 644–45 (Pa.Super. 2005) (citations omitted), *abrogated on other grounds by Commonwealth v. Jette*, 23 A.3d 1032 (Pa. 2011).

In a similar case, in *Battle*, this Court held that Battle's trial counsel was not ineffective for failing to request a jury instruction on constructive possession in his prosecution related to drugs found in Battle's residence that he shared with his co-defendant. While this Court found Battle's claim had arguable merit as the trial court should have instructed the jury on constructive possession in addition to actual possession, this Court found that counsel had a reasonable strategy in refraining from objecting to the deficient charge, which would "likely have harmed her client by stressing the fact that possession can be proven through circumstances other than actual possession." *Battle*, 883 A.2d at 646-47 (noting that the prosecution is more likely to request a constructive possession instruction, which "expands the scope of possession statutes to encompass defendants who are not arrested in actual possession of the controlled substances at issue").

Additionally, this Court found that Battle failed to show he was prejudiced by counsel's inaction. This Court emphasized the substantial evidence presented against Battle and the fact that the jury charge given (on actual possession) was more favorable to Battle than a constructive possession charge as the trial court did not inform the jury that it could find Battle guilty of possession charges even though he had no drugs on his person when he was arrested.

Likewise, in this case, we find that Appellant has failed to show that trial counsel had no reasonable basis for failing to request an instruction on constructive possession.[5] It was a reasonable strategy to avoid placing emphasis on the fact that Appellant could be convicted of the possessory offenses even though Appellant had no contraband on his person when he was arrested.

Furthermore, we cannot find Appellant was prejudiced by counsel's inaction, as Appellant has not shown that the outcome of the proceeding would have been different if the constructive possession charge was given when viewing the substantial evidence presented against Appellant. As such, we find this ineffectiveness claim fails.

Lastly, Appellant claims the PCRA court erred in dismissing Appellant's claim that trial counsel was ineffective for failing to request a judgment of acquittal. Appellant argues that the prosecution asked the jury to make "two equally and mutually inconsistent inferences" from the same set of circumstances. Appellant's Brief, at 8.

We fail to see the merit of Appellant's argument as the prosecution presented one single proposition that Appellant fled from the front passenger

---

[5] "[C]ounsel's stewardship may be deemed effective if any reasonable basis for his or her actions is apparent from the record, and counsel's actual reasoning need not be established at an evidentiary hearing." *Commonwealth v. Washington*, 592 Pa. 698, 733, 927 A.2d 586, 606 (2007) (quoting *Commonwealth v. Hancharik*, 534 Pa. 435, 633 A.2d 1074, 1079 (1993)).

seat of his vehicle when stopped by Officer Corby and that Appellant possessed the drugs, firearms, and paraphernalia in the vehicle, which he concedes belongs to him. We emphasize that "[c]ounsel cannot be deemed ineffective for failing to raise a meritless claim." **Commonwealth v. Fears**, 624 Pa. 446, 461, 86 A.3d 795, 804 (2014) (quoting **Commonwealth v. Washington**, 592 Pa. 698, 927 A.2d 586, 603 (2007) (citations omitted)).

For the foregoing reasons, we affirm the PCRA court's order dismissing Appellant's petition.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/10/2020